838 F.2d 1210
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
William Perrow MOON, III, Defendant-Appellant.
 No. 86-5133.
 United States Court of Appeals, Fourth Circuit.
 Argued: July 10, 1987.
Decided: Feb. 5, 1988.
 
 David Preston Baugh for appellant.
 Karen Breeding Peters, Assistant United States Attorney (John P. Alderman, United States Attorney, Byrum L. Geisler, Paralegal Specialist, Third Year Law Student, on brief), for appellee.
 Before DONALD RUSSELL, WIDENER, and K.K. HALL, Circuit Judges.
 PER CURIAM:
 
 
 1
 William Perrow Moon, III, appeals his conviction for possession of cocaine with the intent to distribute. 21 U.S.C. Sec. 841(a)(1). Moon claims that the district court committed reversible error in answering a jury question relating to his entrapment defense. We disagree and affirm.
 
 
 2
 For some months prior to December 1984, Moon had worked with his friend Alvin Ferguson, a drug dealer, in setting up drug transactions. Moon acted as the go between and lined up buyers for Ferguson. This occurred on five or six different occasions. By December 1984, law enforcement officers had targeted Moon as a drug dealer.
 
 
 3
 Earlier that year, a woman named Winona McDaniel had become a paid informant for the police. Mrs. McDaniel testified that she had previously lived in the same trailer park as Moon and had purchased marijuana from him for resale some seven or eight years earlier. She also stated that Moon had dealt in the drug known as PCP at that time.
 
 
 4
 Around the first of December 1984, Mrs. McDaniel, working with a state trooper, made an unrecorded call to Moon. Moon told Mrs. McDaniel that he could get her some cocaine. During this initial call, Mrs. McDaniel represented to Moon that she was having troubles at home and needed to make money so that she and her children could leave.[1] The two agreed on a place to meet to complete the sale. This was the first time that Mrs. McDaniel and Moon had spoken in seven or eight years.
 
 
 5
 On December 4, 1984, Mrs. McDaniel was to meet with Moon and his source, Alvin Ferguson, to purchase cocaine. However, the trade fell through when Moon became suspicious of the undercover state trooper who had accompanied Mrs. McDaniel.
 
 
 6
 The next day, Mrs. McDaniel met with Federal Bureau of Investigation agent Robert Jones. Jones was then working on a task force investigating, among other things, Moon's drug activities. Jones had Mrs. McDaniel call Moon again to set up another sale. This phone conversation was recorded and she again referred to her troubled family situation. Moon asked Mrs. McDaniel to call him back the next Friday.
 
 
 7
 When Mrs. McDaniel and Moon talked that following Friday, December 7, 1984, Moon stated that he had arranged a meeting between Mrs. McDaniel and his source. When Mrs. McDaniel expressed hesitance about meeting this source, Moon vouched for him and reassured her. Mrs. McDaniel eventually went to the meeting place but no one showed up, and she left after an hour.
 
 
 8
 The next morning, Saturday, December 8, Mrs. McDaniel called Moon again, and another sale was set up. Moon did in fact meet Mrs. McDaniel at the appointed location and they traveled in Moon's car to another spot, where they met another man who sold Mrs. McDaniel three-quarters of an ounce of cocaine. The seller, however, gave the cocaine to Moon who held it until after he and Mrs. McDaniel had left the scene of the drug buy. When Moon finally gave Mrs. McDaniel the cocaine, he took $50.00 for his expenses and kept some of the cocaine for himself.
 
 
 9
 A couple weeks later, Mrs. McDaniel again called Moon to set up another trade. However, Moon was unable to set up anything at that time. Mrs. McDaniel also testified that there were other unrecorded phone conversations between her and Moon in which drug sales were discussed.[2]
 
 
 10
 On January 7, 1985, Mrs. McDaniel called Moon to set up another deal. She called Moon again the next day, January 8th, and then, after meeting him, followed him to a fast food restaurant, where they met Alvin Ferguson. Ferguson took Mrs. McDaniel's $1200 and then left to go make the purchase. However, Ferguson was unable to make the purchase and returned with the money. Moon and Mrs. McDaniel agreed to meet the next day.
 
 
 11
 The next day, January 9, Mrs. McDaniel and Moon met and Mrs. McDaniel gave Moon the money. Ferguson then took the money, went out and purchased the cocaine, and then returned with the drugs. Before the cocaine was given to Mrs. McDaniel, Ferguson removed a small amount as his fee.
 
 
 12
 Moon was indicted in connection with this cocaine distribution. The two-count indictment charged in Count 1 that Moon was involved in a conspiracy beginning in December 1984 and lasting until January 9, 1985 (the date of the January drug sale to Mrs. McDaniel), and in Count 2 that he possessed with intent to distribute and distributed drugs to Mrs. McDaniel on January 9, 1985.[3] At trial, Moon raised an entrapment defense as to both counts, claiming that he would not have set up the drug transactions had it not been for Mrs. McDaniel's representations that she needed the money from a drug sale to help her family. Consistent with this defense, Moon admitted that he had twice set up drug sales for Mrs. McDaniel. Moon also admitted during his testimony that he had set up similar transactions for others besides Mrs. McDaniel. Moon also testified that his motivation in setting up such deals was to obtain cocaine for his personal use. Finally, Moon testified that Alvin Ferguson was skeptical about dealing with Mrs. McDaniel[4] and that Moon had to coax him to do so.
 
 
 13
 The district court's charge to the jury included an instruction on the entrapment defense. After it had retired, the jury returned with a question for the court concerning the entrapment issue.
 
 
 14
 Please clarify if we are to consider the entrapment only on January the 9th, 1985 or if we consider the entrapment issue from December the 7th, 1984 to January the 9th, 1985.
 
 
 15
 In response to this inquiry, the lower court responded as follows:
 
 
 16
 I don't want and never do comment on the evidence in a case. I leave that up to the jury to determine. I did tell you in the charge that there are two (2) counts to the indictment and each of the accused is named in each count of the indictment. The first count is the alleged conspiracy count and the Count 1, the conspiracy count, alleges that this conspiracy existed from on or about December 1984 to on or about January the 9th, 1985. That's the conspiracy count; that's the time interval alleged. Count 2 charges that on or about January the 9th, 1985 that Mr. Moon intentionally--knowingly and intentionally and unlawfully possessed with intent to distribute a controlled substance, cocaine. And I told you that, you know, possession could be sole or joint or it could be actual or it could be constructive. I also told you that as to each of these two (2) counts Mr. Moon had interjected the defense of entrapment and so the time period in Count 1 runs from December to January, to on or about January the 9th, 1985. Count 2 deals with a date on or about January the 9th, 1985. And I told you that it didn't have to be the exact date alleged in the indictment if it was on or about a date close to that alleged in the indictment or a period of time close to the period of time alleged in the indictment.
 
 
 17
 Now, I could again go over and read the law as it pertains to entrapment if you would like for me to do so, but you probably remember what I told you about entrapment. All right. Does that answer your question? All right. Ask the jury to take the--I mean, ask the Marshal to take the jury back to its jury room. All right.
 
 
 18
 The basis of this appeal and the only question raised is that the court's answer to the jury's question restricted the date for which entrapment as a defense could be considered on Count 2, the possession and distribution count, to January 9, 1985, and that the court prevented the jury from considering the full scope of the entrapment evidence on the second count of the indictment.
 
 
 19
 To arrive at this conclusion, the defendant isolates a small part of the court's response quoted above, which is as follows:
 
 
 20
 [A]s to each of these (2) counts Mr. Moon had [sic] interjected the defense of entrapment and so the time period in Count 1 runs from December to January, to on or about January the 9th, 1985. Count 2 deals with a date on or about January 9th., 1985.
 
 
 21
 We think a fair reading of the district court's answer to the jury question, which we have quoted in full above, shows that it did not prevent the jury from considering the full scope of the entrapment evidence. Neither did it restrict the date for which entrapment evidence could be considered on Count 2 to January 9th, 1985.
 
 
 22
 In sum, we are of opinion that the district court correctly responded to the jury's question and that such response is not subject to justifiable criticism.
 
 The judgment of conviction is
 
 23
 AFFIRMED.
 
 
 
 [1]
 She also testified that this was a truthful statement and that she was unhappy with the direction of her life
 
 
 [2]
 One such call, according to Mrs. McDaniel, was when she called Moon and left a message on his answering machine. Moon called her back, asking if she were ready to make a deal
 
 
 [3]
 Moon was acquitted on Count 1 and found guilty on Count 2
 
 
 [4]
 Ferguson's testimony confirmed this fact